**In re SUNNYSIDE TIMBER, LLC, Sunnyside Land, LLC, Debtors.**

**Nos. 00–51233, 00–51234.**

United States Bankruptcy Court, W.D. Louisiana.

May 16, 2006.

D. Patrick Keating, Opelousas, LA, G. Allen Walsh, Baton Rouge, LA, Steven Durio, Lafayette, LA, for Debtors.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

On June 6, 2000 ("Petition Date"), involuntary petitions for relief were filed against Sunnyside Timber, L.L.C. ("Timber") and Sunnyside Land, L.L.C. ("Land", and with Timber, "Debtors"). The Debtors consented to the entry of relief under chapter 11 of the Bankruptcy Code on August 17, 2000.

After substantial but unsuccessful efforts were made at reorganization, both cases were converted to chapter 7. The chapter 7 trustees for Land and Timber are Elizabeth G. Andrus and Lucy G. Sikes, respectively (collectively, "Trustees").

The Debtors' sole tangible asset consisted of approximately 26,000 acres of real property, including substantial timber, in Utah. At the time of the Debtors' acquisition of the property, the timber estate was separated from the real property so that Land became the owner of the real property while Timber acquired the timber growing thereon.

Years of litigation ensued in the chapter 11 proceeding and into the chapter 7 case. Ultimately, the Trustees filed a Motion to Approve Compromise and Settlement ("Settlement Motion"), the settlement being based upon that certain Term Sheet as to Settlement of Sunnyside Land and Sunnyside Timber Litigation ("Term Sheet"). The Term Sheet was attached to and incorporated by reference into the Settlement Motion. On December 1, 2004, the court approved the Settlement Motion as being in the best interest of the two estates.

Reflecting the complex nature of these bankruptcies[1], the Term Sheet required multiple performances by several parties, all of which were interconnected with one another. In addition to the Trustees, others executing the Term Sheet included Washington State Bancshares, Inc. ("Bancshares"), D. Creig Brignac, Sue S. Brignac, Regions Bank, S.C. of Okaloosa, Inc. ("SCO")[2].

Generally speaking, the Term Sheet provided for the Trustees to conduct a sale of the Utah property pursuant to section 363, with SCO being obligated to offer credit bids of $6.3 million for the real property

---

**1.** The court will not recite the facts which bring us to the present. The history of these proceedings has been sufficiently chronicled in several prior decisions. *See, e.g., D. Creig Brignac, et al. v. Paul Sims, et al.,* Adversary Proceeding Number 00–5066, Reasons for Decision rendered April 12, 2001 (Docket Entry No. 75).

**2.** The Term Sheet was executed by other parties whose identity is not essential to this decision.

and $3.3 million for the timber. The Term Sheet also provided that the "Brignac or his assigns will loan the sum of $550,000 to the Trustees ... to enable the Trustees to pay the sum of $325,000 to Regions as collateral assignee of S.C.O. towards the payment of the remaining balance of the S.C.O./St. Landry Bank note." At that point, Regions and SCO would waive any claim under the lender's title policy and all claims of SCO and Regions would be withdrawn. Further, upon the closing of the Trustees' sale and the funding of the loan to the Trustees, S.C.O. and Regions would release the Brignac' s stock in Bancshares which had been previously pledged as security.

Pursuant to the Term Sheet, the Trustees issued a Notice of Sale of the Debtors' land and timber located in Utah to S.C.O. or the highest bidder. SCO's credit bid was the highest and best offer, and, on February 1, 2005, the court entered an Order Approving the Sale of Real Property and Standing Timber to SCO Free and Clear of all Liens, Claims, Interest, Mortgages and Encumbrances. The Trustees thereafter delivered a deed in escrow to Robert Reynolds, counsel for Regions, in order to advance the performances by the other parties to the Term Sheet.

Thereafter, on July 22, 2005, SCO sold the Sunnyside property for the sum of $13 million. Based upon the sales price, the obligation to Regions was satisfied. The Trustees, Bancshares and Brignac therefore contend that there is no obligation to pay the $325,000 to either Regions or SCO. SCO, however, argues that the Term Sheet clearly provides that the money is due regardless of the existence of an obligation to Regions. SCO further contends that the $325,000 is and always was SCO's money, which was supposed to be paid to the holder of the St. Landry Bank Note in exchange for the release of the Bancshares stock. SCO has not received the $325,000 and has not released the stock.

Presently before the court are the following motions: (1) **MOTION TO CONFIRM AND APPROVE PERFORMANCE PURSUANT TO SETTLEMENT AGREEMENT** filed by the Trustees, Brignac and Bancshares; (2) **MOTION FOR DETERMINATION OF PROPER PAYMENT** filed by the Trustees; and (3) **MOTION TO COMPEL COMPLIANCE WITH THE TERMS OF THE SETTLEMENT AGREEMENT AND MOTION FOR SANCTIONS** filed by SCO. A hearing on all matters was held on November 8, 2005. After hearing argument from counsel and receiving post-hearing briefs, the matters were taken under advisement.

## JURISDICTION

The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

## LAW AND ANALYSIS

The parties have vigorously argued their relative positions and have provided the court with detailed memoranda. In a nutshell, however, the core issue is the interpretation of one provision of the Term Sheet. A cursory examination of that document suggests a heavily-negotiated agreement which was reviewed and modified more times than the court can imagine and which contains more pages of signa-

tures than substance. This is not to say that the one disputed provision is insignificant to any of the parties.

The court considers the ultimate issue to be whether the $325,000 mentioned in paragraphs 2 and 3 of the Term Sheet was required to be paid even if no balance remained to be paid on the S.C.O./St. Landry Bank note. Those two paragraphs read in their entirety as follows:

2. Within ten (10) days after the Bankruptcy Court's approval of this settlement and the closing of the § 363 sale under the terms of this agreement, Mr. Brignac or his assigns will loan the sum of $550,000.00 to the trustee for Sunnyside Land and Timber (or in amounts as prorated by the Trustees) to enable the Trustees to pay the sum of $325,000 to Regions as collateral assignee of S.C.O. towards the payment of the remaining balance of the S.C.O./St. Landry Bank note, the surrender of the S.C.O. lenders' title policy to the Trustees, the withdrawal with prejudice by S.C.O. of any claims in the bankruptcy cases, existing administrative expenses and maintain a reserve to provide for a distribution to unsecured creditors. This $550,000 super priority loan shall be repaid with interest at a variable rate equal to Wall Street Prime plus one-half percent adjusted daily, together with all appropriate legal fees and costs from the net proceeds of the recovery against FATCO without further order of the court.

3. The Trustees shall, upon approval of this settlement, the closing of the § 363 sale as contemplated by this agreement and funding of the loan by Mr. Brignac, immediately pay to Regions as collateral assignee of

S.C.O. the sum of $325,000.00 towards the payment of the remaining balance due Regions, as collateral assignee of S.C.O. as assignee of the St. Landry Bank/Sunnyside Timber notes where upon S.C.O. and Regions waive any claim under the lender's title policy and shall surrender the same to the Trustee and all claim of S.C.O. and Regions against Sunnyside Timber, LLC shall be withdrawn with prejudice. Upon the closing of the § 363 sale as contemplated by this agreement and funding of the $550,000 loan by the Trustees, S.C.O. and Regions shall release the Washington State Bancshares, Inc. stock pledged as security.

The dispute arose when something unexpected occurred, namely, the subsequent sale of the property by SCO resulting in more money than was anticipated by anyone. As a result, the St. Landry Bank note was paid in full from the sales proceeds. Since no remaining balance was due, the Trustees argue that no payment was required pursuant to paragraph 3. However, when it received no payment, SCO took the position that it was not required to release the stock as obligated by the last sentence of paragraph 3.

■ The interpretation and enforcement of the Term Sheet is a matter of basic state law. Under Louisiana law, contracts are interpreted according to the intent of the parties.[3] Louisiana Civil Code Article 2054 provides that when the parties to a contract have made no provision for a particular situation, the court must consider the obligation to include both whatever equity is implied or necessary for the contract to achieve its purpose.

---

**3.** Louisiana Civil Code Article 2045.

SCO argues that the Term Sheet should be interpreted to provide that the $325,000 is due to SCO regardless of the balance on the note. SCO points out that (a) Regions was only receiving the funds as collateral assignee of SCO, (b) the payment was not dependant upon the existence of a balance due on the note, and (c) the funds were being paid in exchange for the release of the stock. The court disagrees.

First, while the Term Sheet clearly indicates that Regions was receiving the funds as collateral assignee, this provision provides that Regions and Regions alone, not its assigns, would receive the funds. Based upon the amount of legal review put into the Term Sheet, the court has no doubt that the parties would have specified if any party other than Regions would be entitled to receive the $325,000. Second, the language of both paragraphs 2 and 3 clearly contemplate a balance due on the St. Landry Bank note and clearly indicate that the purpose of the payment is to pay that balance. If the parties had intended that the funds would be paid regardless of any balance due, there are numerous simple ways by which this contingency could have been addressed. Finally, the Term Sheet clearly provides that the release of the stock was dependent on two things, namely the closing of the section 363 sale and the funding of the $550,000 loan. The final sentence of paragraph 3 states that "S.C.O. and Regions shall release" the stock upon the occurrence of those two events. There is no mention of the payment of the $325,000 as a condition to the release of the stock.

The court believes that the Term Sheet is clear and unambiguous and must be interpreted to provide that the Trustees are not required to pay the sum of $325,000 to either Regions or SCO as the remaining balance due on account of the St. Landry Bank note was zero. Further, under the clear provisions of the Term Sheet, Regions and SCO must immediately release the Bancshares pledged as security.

For the foregoing reasons, the **JOINT MOTION TO CONFIRM AND AP-PROVE PERFORMANCE PURSUANT TO SETTLEMENT AGREEMENT** filed by the Trustees, Brignac and Bancshares is **GRANTED.** The **MOTION FOR DE-TERMINATION OF PROPER PAY-MENT** filed by the Trustees is **DENIED AS MOOT.** The **MOTION TO COMPEL COMPLIANCE WITH THE TERMS OF THE SETTLEMENT AGREEMENT AND MOTION FOR SANCTIONS** filed by SCO is **DENIED.** Within 15 days of entry of these reasons, counsel for the Trustees shall submit an order in conformity with the foregoing reasons.

**IT IS SO ORDERED.**